WILLIAMS *v.* LOGUE.

(Division B. Feb. 23, 1929.)

[122 So. 490. No. 27917.]

*J. A. Cunningham,* of Booneville, for appellant.

*I. L. Sheffield,* of Fulton, for appellee.

GRIFFITH, J., delivered the opinion of the court.

Inasmuch as a peremptory instruction was granted in behalf of the defendant, we must look to the facts as shown by the evidence adduced in favor of the plaintiff. These facts are that some time, during the year 1925 the minor son of plaintiff exchanged a passenger car with one Moore for a truck, the minor giving in addition his check for twenty-four dollars. Plaintiff the next day, on learning of this trade, persuaded his minor son to disaffirm it, which was done; with the result that in a few days the car was returned to the minor and the truck to Moore; and, although the check, disaffirmed in consequence of the disaffirmance aforesaid, should also have been returned with the car, this was not done. At this juncture, and apparently within a day or two, the defendant, Logue, intruded himself into the matter, and approached the plaintiff with the representation and warning that the son of plaintiff would "get into bad trouble" unless the check be obtained, whereupon the plaintiff, who is apparently a very ignorant man, acceded to the proposition of said Logue that the latter should go and get the check. No authority was given Logue to pay anything for the check even if this were material to the case. Logue thereupon went to Moore and asked for the check, and Moore let him have it with the understanding that if he could get anything out of it, he, Logue, could have half of whatever he could get. No amount was fixed, Moore testifying that all that was said on that point was that he.

Moore, "thought he was due something out of it" because he had lost another trade during the time the boy had the truck.

The defendant, Logue, thence hurried back to the plaintiff, and told plaintiff that although he had succeeded in getting the check the matter was so serious that he had had to pay twelve dollars and fifty cents for it, and, not having the money, he had been obliged to borrow the sum from his, Logue's father-in-law, and that he would deliver the check upon reimbursement to him, Logue, for the twelve dollars and fifty cents which he had been compelled to pay out. The plaintiff having no money, the matter was laid before his wife, the mother of the minor aforesaid, and it was found that she had only four dollars. In this impoverished situation plaintiff could do nothing further in the way of money, but in lieu thereof he offered the defendant, Logue, a calf which they valued at eight dollars and to pay the balance of fifty cents as soon as it could be obtained. Logue agreed to this, and he took the four dollars and the calf, and delivered up the check. He then went back to Moore, and represented to Moore that he had got only nine dollars out of the transaction, and he paid Moore one-half of the represented amount, or four dollars and fifty cents.

It was not until the spring of 1928 that plaintiff learned for the first time that every part and parcel of the representations made to him by the defendant, Logue, was false; and thereafter, in a reasonable time, he brought this suit in replevin for the identical animal, now grown to be a cow worth seventy-five dollars.

The learned circuit judge was of the opinion that the right of the plaintiff to recover would be limited to eight dollars, the value of the calf at the time of the perpetration of the fraud, plus interest; that the plaintiff could not recover property now worth seventy-five dollars, when all that the plaintiff parted with was worth only eight dollars, although what is now the cow

is the same animal that was then a calf. Accordingly, he granted the peremptory instruction as aforesaid.

If a person through fraud obtains the transfer to him of personal property there is no doubt that the true owner may regain his title at his election, and that he may do this by an action of replevin. 2 Williston on Sales, section 567. The true owner must exercise his election to rescind with reasonable promptness after the discovery of the cheat, and he must fully restore or offer to restore whatever he on his part has received out of the transaction, which in this case was nothing. When these are done, and the election to rescind is evidenced by formal action taken in due time, the effect is not only to return the title to the true owner, but the reversion will, in cases of corrupt fraud, operate by relation so as to make the transaction void *ab initio,* and, except as to the rights of third parties, to return the title to the true owner as if it had never been out of him. Such being the result, the further result is that the title returns the property with whatever growth or increase in value that has accrued, whether from natural causes, or by expenditures or labor on the part of the wrongdoer. Any other rule would depreciate or destroy the efficacy of the remedy and permit a swindler to profit by his own wrong. As said in *Guckenheimer* v. *Angevine,* 81 N. Y. at page 397, a case wherein the fraudulent purchaser had enhanced the available value of the property by the payment of a large tax due thereon: "The case is analogous to that of a willful trespasser, who has wrongfully converted a chattel, and afterwards enhances its value by labor bestowed upon it. The wrongdoer in such a case is bound to account to the true owner for the value of the chattel in its changed or improved condition, and his recovery will not be limited to its value in the condition in which it was at the time of the conversion." We approve, and adopt, as applicable to a case like this, the holding in *Masson* v. *Bovet,* 1 Denio (N. Y.) 69, 74, 43

Am. Dec. 651, at page 654, and particularly do we adopt and apply that part of the opinion which addresses itself to the general requirement of the law, and to the exceptions to that rule, that it is a condition upon the right of rescission that the parties must be restored to the situation occupied by them at the time of the original transaction: "This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot, that the party defrauded cannot unloose him, the fault is his own; and the law only requires the injured party to restore what he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him. If these fail to extricate the wrongdoer from the position he has assumed in the execution of the contract, it is in no sense the fault of his intended victim, and upon the principles of eternal justice, whatever consequences may follow, they should rest on the head of the offender alone."

We add only, in order to guard against any misconception as to the effect of this opinion, that we are dealing with a case of active, corrupt, and conscious fraud, with a case wherein the moral attitude of the defendant is no better in substance than if he had obtained the property by larceny. Whether the rule above laid down will apply to cases of legal or constructive fraud, wherein there is no actual, active, and conscious corruption deliberately intended, we do not decide, as such a case as last stated is not before us.

*Reversed and remanded.*